UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL EDGARDO FIGUERO CADENAS,<br>Petitioner,<br>v.<br>FERETI SEMAIA, et al.,<br>Respondents. | Case No. 5:26-cv-04727-PD<br><br>**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING RELEASE**<br><br>**A# 246-061-126** |

Miguel Edgardo Figuero Cadenas ("Petitioner") filed a counseled Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, along with an ex parte application for a temporary restraining order. Dkt. Nos. 1, 3. The Court has considered the Petition, the attached exhibit, the application for a temporary restraining order, Respondents' answer and response to temporary restraining order, and Petitioner's traverse. Dkt. Nos. 1, 3, 9, 10. For the reasons stated below, the Petition is granted in part.

## I. Background

Petitioner is a native and citizen of El Salvador who came to the United States in approximately 2004, when he was twenty years old. Dkt. No. 1, Petition ¶¶ 2, 21. He has lived in this country continuously for approximately

twenty-two years. *Id.* ¶ 21. During that time, Petitioner has built substantial family and community ties. *Id.* ¶ 22. Petitioner's mother is a lawful permanent resident of the United States, and his siblings are United States citizens. *Id.* Petitioner's mother has also pursued a lawful family-based immigration process on his behalf, filing Form I-130 petitions identifying Petitioner as her unmarried adult son. *Id.*

Petitioner has also established a substantial history of employment and community involvement. *Id.* ¶ 23. Before his detention, he worked for approximately six years in the moving and hauling industry. *Id.* He is involved in his local church and, after more than twenty years in the United States, has developed the ordinary social, economic, and community ties that accompany decades of life in one place. *Id.* Petitioner has no known criminal convictions. *Id.*

On June 21, 2026, Immigration and Customs Enforcement ("ICE") agents apprehended Petitioner in Santa Monica, California. *Id.* ¶ 25. Following his June 21, 2026 arrest, ICE transported Petitioner to the Adelanto ICE Processing Center, where he remains detained. *Id.* ¶ 26. His detention has removed him from the family, employment, church, and community life he developed over more than two decades in the United States. *Id.*

At the time of filing his Petition, Petitioner had spent 59 days in federal immigration custody without any individualized determination that his continued confinement is necessary to protect the community or ensure his appearance at immigration proceedings. *Id.* ¶¶ 26, 28. According to Petitioner, Respondents have not afforded him the discretionary custody process applicable under 8 U.S.C. § 1226(a). *Id.* ¶ 28. Petitioner's individual circumstances are precisely the type of circumstances an individualized custody determination is designed to assess and yet no adjudicator has

weighed those circumstances and determined that Petitioner's continued incarceration is necessary. *Id.* ¶¶ 28-30.

According to Petitioner's Automated Case Information on the Executive Office for Immigration Review website, he was ordered removed on November 12, 2026, and his appeal to the Board of Immigration Appeals is due December 14, 2026. *See* https://acis.eoir.justice.gov/en/ (last visited November 16, 2026). Therefore, he is not subject to a final order of removal. *See* 8 C.F.R. § 1241.1(c) (a removal order becomes final "[u]pon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time").

## II. Discussion

The Petition raises two claims: (1) Petitioner's detention violates the Immigration and Nationality Act ("INA") and the Administrative Procedures Act ("APA") because Respondents have failed to provide him with an individualized custody determination under 8 U.S.C. § 1226(a); and (2) Petitioner's detention violates procedural due process under the Fifth Amendment.

In Respondents answer and response to Petitioner's request for a temporary restraining order, they assert that Petitioner was not previously released from ICE custody on an order of supervision and has no due process right to a pre-deprivation hearing. Dkt. No. 9. Respondents further assert that Petitioner appears to be entitled to request and receive an initial bond hearing under *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026). Respondents further argue that to the extent Petitioner has not requested a bond hearing, he has not exhausted his administrative remedies. *Id.* Respondents attached no exhibits to their answer.

In Petitioner's traverse, he argues that Respondents concede in their answer that Petitioner is detained under 8 U.S.C. § 1226(a) and has been deprived of the individualized custody process available under the statutory framework. Dkt. No. 10. Further, because Petitioner has been detained since June 21, 2026 without any adjudicator determining that he poses a danger to the community or a flight risk, he is entitled to immediate release.

### A. Detention Under 8 U.S.C. § 1226(a)

Section 1226(a) "sets out the general rule" for "the arrest, detention, and release" of "aliens present in this country" "who are believed to be subject to removal." *Nielsen v. Preap*, 586 U.S. 392, 396–97 (2019). Under Section 1226(a) and its implementing regulations, a DHS officer may arrest and take into custody a noncitizen "under the authority of Form I–200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b). The Government "may" detain such individuals "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

DHS officers also have the authority to conduct a warrantless arrest if there is probable cause to believe a person is subject to removal and "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). *See generally Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). Such individuals must be promptly brought before an examining officer to determine if the person is subject to removal, 8 C.F.R. § 287.3(a), and referred for a custody determination within "48 hours of the arrest" absent an emergency or other extraordinary circumstances. 8 C.F.R. § 287.3(d).

Regardless of whether the individual is arrested pursuant to a warrant or DHS's warrantless arrest authority, DHS officers conduct an initial custody determination to decide whether to release or detain the person. 8 C.F.R.

§ 1236.1(c)(8). Unless the person is subject to mandatory detention under Section 1226(c) based on their criminal history, DHS has "the discretion either to detain the alien or to release him on bond or parole." *Nielsen*, 586 U.S. at 396. The DHS officer must release the noncitizen if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8).

DHS utilizes a Notice of Initial Custody Determination, Form I-286, to document its custody determinations. 8 C.F.R. § 236.1(g). The Form I-286 includes "the formal mechanism—a box the detainee may check—to immediately request" that an Immigration Judge ("IJ") review DHS's custody determination at a custody redetermination hearing (*i.e.*, a bond hearing). *Garcia-Maya v. Blanche*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *8 (D. Nev. July 7, 2026).

If the noncitizen checks this box, or otherwise requests a custody redetermination hearing, an IJ will set a hearing in Immigration Court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19. "If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). The noncitizen can "appeal an adverse decision to the BIA." *Id.* (citing 8 C.F.R. § 236.1(d)(3)). Alternatively, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." *Id.* (citing 8 C.F.R. § 1003.19(e)). "The same procedures apply to this new hearing, and its outcome is also appealable to the BIA." *Id.* The noncitizen may also seek judicial review of the immigration courts' bond determination through a

habeas petition challenging the determination as constitutionally deficient, legally erroneous, or an abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024).

Reviewing this statutory and regulatory framework, the Ninth Circuit has observed that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz*, 53 F.4th at 1202.

### B. The Constitutional Grounding for § 1226(a) Procedures

The Supreme Court has long recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. *Id.* at 690–92. In the context of immigration detention, "it is well-settled that due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (cleaned up). *See also Padilla v. United States Immigr. & Customs Enf't,* 192 F.4th 894, 914 (9th Cir. 2026) (recognizing that "the principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of British and American legal traditions since the thirteenth

century" and discussing the history of protections against arbitrary detention applied to noncitizens).

Section 1226(a) and its implementing regulations establish procedures to ensure that the Government only detains noncitizens where doing so advances its legitimate interests in preventing danger and mitigating risk of flight. Without such protections, there is an unacceptably high risk that that the noncitizen's confinement is not "reasonably related" to a legitimate purpose. *Zadvydas*, 533 U.S. at 690; *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1085 (N.D. Cal. 2025) ("Noncitizens subject to § 1226(a) therefore have a statutory as well as constitutional interest in remaining out of custody unless they pose a threat to the public or a flight risk.").

The mechanism for making such evaluations is the initial custody review, which ensures that DHS only detains a noncitizen where officers determine that detention is justified on an individualized basis and engages "in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Kelly v. Almodovar*, No. 25-cv-6448-AT, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025) (quotations omitted). It also "create[s] a record that permits meaningful review of whether the required procedure occurred." *Dos Reis v. McShane*, No. 26-cv-3775, 2026 WL 1746649, at *5 (E.D. Pa. June 17, 2026) ("A contemporaneous, individualized custody determination [ ] require[s] ICE to explain why detention, rather than release on conditions, is necessary for *this* Petitioner.") (emphasis in original). And it is the "mechanism" by which noncitizens are advised that they can seek review before an IJ and provided an opportunity to request such review by checking a box on the Form I-286. *See Garcia-Maya*, 2026 WL 1965886, at *8.

Absent an initial custody review, a noncitizen may not be aware that they are eligible for a bond hearing or know how to request one. *See*

*Castellanos Franco v. Warden, Adelanto ICE Processing Ctr.*, et al., No. 5:26-cv-05549-MWC-DMK, 2026 WL 2922670, at *4–5 (C.D. Cal. Sept. 29, 2026) ("Respondents' 'failure to provide petitioner with any of § 1226(a)'s 'substantial procedural protections,' . . . including the right to request an initial custody re-determination before an IJ under 8 C.F.R. § 1236.1(d), violated procedural due process.' ") (quoting *Rivas Garcia v. Current or Acting Field Dir.*, No. 1:26-cv-03245-DAD-SCR, 2026 WL 1265937, at *4 (E.D. Cal. May 8, 2026)). And even when a noncitizen requests a bond hearing before an IJ, it may be weeks or months until the hearing is scheduled. *See generally Trujillo-Hernandez v. Mullin, et al.*, No. 5:26-cv-03282-SP, 2026 WL 2826326, at *5 (C.D. Cal. Sept. 21, 2026).

In short, without an initial custody determination, a person could be confined for a prolonged period without any determination that such a profound deprivation of their liberty is actually justified.

Considering the importance of the procedures available under Section 1226(a) at the outset of an individual's detention, numerous courts have recognized failure to provide an initial custody determination is not only a statutory violation, but also a violation of a noncitizen's due process rights. *Lopez Esteban v. Warden-Facility Adm'r of Nw. Processing Ctr.*, No. 2:26-cv-02548-JHC, 2026 WL 2686824, at *4 (W.D. Wash. Sept. 14, 2026) (quoting *Pastrana-Beltran v. Mullin*, 2026 WL 1398609, at *2 (E.D.N.Y. May 19, 2026) and collecting cases). *See also Occeus v. Warden, California City Detention Facility*, No. 1:26-cv-07057-TLN-SCR, 2026 WL 2858725, at *1 (E.D. Cal. Sept. 23, 2026) ("Petitioner was denied statutory and regulatory protections under § 1226(a) and 8 C.F.R. § 1236.1(d) for a period of months in this case, which constitutes a separate procedural due process violation."); *Angulo-Barbosa v. Blanche, et al.*, No. 2:26-cv-02102-RFB-BNW, 2026 WL 2676815, at *2 (D. Nev. Sept. 11, 2026) ("the Court finds Petitioner's detention without

notice of an initial custody determination violates Petitioner's right to substantive and procedural due process"); *Rodriguez v. Knight*, No. 1:26-cv-00505-BLW, 2026 WL 2641448, at *3 (D. Idaho Sept. 8, 2026) ("the Government violated his due process rights by denying him the individualized custody determination required under § 1226(a)"); *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*, No. 1:26-cv-05661-DAD-SCR, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); *J.T.G. v. Genalo*, No. 26-cv-4521-AT, 2026 WL 1724325, at *4 (S.D.N.Y. June 15, 2026); *Curimilma Quille v. Blanche*, No. 26-cv-2818-HG, 2026 WL 1453889, at *4 (E.D.N.Y. May 22, 2026).

**C. Respondents' Failure to Comply with § 1226(a)**

Petitioner was detained on June 21, 2026, and filed this Petition almost two months later, on August 19, 2026. Petitioner alleges he never received an individualized custody determination. Petition ¶¶ 28, 46, 50-53, 63, 85. Respondents provide no evidence or argument that Petitioner received an individualized custody determination; Respondents did not submit a Notice of Initial Custody Determination, Form I-28. Further, based on the information before the Court, Petitioner has never received a bond hearing.

Respondents do not contest Petitioner's assertion that he is part of the Bond Eligible Class certified in *Maldonado Bautista*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.), and therefore, he should have been treated under § 1226(a) the moment he was detained. Petition ¶¶ 36-38. Beginning in July 2025, DHS took the position that individuals who entered without inspection were detained under § 1225 and were not entitled to the protections set out in § 1226(a). *See Maldonado Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1094 (C.D. Cal. 2025) (describing policy). On July 30, 2026, the Ninth Circuit confirmed that those who entered without inspection are properly detained under § 1226, not § 1225, and are entitled to the protections of that statutory

provision. *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1164–65 (9th Cir. 2026). Here, there is no evidence in the record showing that the procedures under § 1226(a) were followed. And by denying Petitioner an individualized custody determination and the protections of § 1226(a), Respondents created an unacceptably high risk that Petitioner's detention is not justified on danger or flight risk grounds.

For these reasons, the Court finds that Petitioner was detained in violation of his due process rights.

**D. Remedy**

Respondents argue that under § 1226(a) and, *Rodriguez Vazquez*, 183 F.4th at 1165.Petitioner is entitled to request and receive an initial bond hearing before an immigration judge. However, as many courts to address this issue have concluded, the failure to comply with the § 1226(a) procedures "cannot be cured through belated compliance with statutory requirements." *Zurita Navarro*, 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026); *J.T.G.*, 2026 WL 1724325, at *4 ("Because J.T.G.'s detention was unlawful from the outset, the government cannot cure its procedural failures by providing a custody determination three weeks later."). *See also Lopez Esteban*, 2026 WL 2686824, at *4 (collecting cases); *Gonzalez v. Joyce*, No. 25-cv-8250-AT, 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2025) ("The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment.").

Petitioner has been confined since June 21, 2026, without any determination that his detention was warranted. A bond hearing belatedly conducted at some point in the future is " 'no substitute' " for an initial custody determination that would have established "a lawful basis for

detention in the first instance." *Garcia-Maya*, 2026 WL 1965886, at *8 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)).

Instead, because Petitioner's detention has been unlawful from the outset, the Court concludes that the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing him from detention." *Reyes v. Santacruz, Jr., et al.*, No. 26-cv-3394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026). The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has particular force where, as here, the protections at issue are intended to prevent unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

**III. Order**

For the foregoing reasons, the Petition is GRANTED as to Count One, and the remaining count is dismissed without prejudice.

Petitioner Miguel Edgardo Figuero Cadenas (A# 246-061-126) is **ordered released** within 24 hours of this Order.

This Order does not provide Petitioner with blanket immunity from future detention – that relief is likely beyond the Court's jurisdiction – but any future enforcement actions after release must comply with Due Process requirements.

Petitioner's request for a temporary restraining order, Dkt. No. 3, is denied as moot.

At the time of release, Respondents are ordered to return to Petitioner any of Petitioner's personal belongings that were seized from him, including all identification, work authorization, or other official documents.

**Respondents are further ordered** to file, within three days of Petitioner's release, a status report confirming Petitioner's release and the return of his belongings.

IT IS SO ORDERED.

DATED: November 16, 2026

Patricia Donahue
United States Magistrate Judge